IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GERARDO O., § § Plaintiff, § § v. § § KILOLO KIJAKAZI, ACTING § COMMISSIONER OF SOCIAL § SECURITY, § § Defendant. § | Case No. 3:22-cv-00155-X-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Gerardo O.'s[1] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security (ECF No. 1). The District Court referred the case to the United States Magistrate Judge for pretrial management under 28 U.S.C. § 636(b). For the reasons explained below, the Magistrate Judge recommends that the Court REVERSE the decision and REMAND the case to the Commissioner.

## Background

Plaintiff alleges that he is disabled due to ailments including myocardial infarction, depression, bipolar disorder, and anxiety disorder. Pl.'s Br. 5-6 (ECF No. 14). Plaintiff was born in 1979, and he claims that he has been disabled since

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018, Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

October 25, 2019. Admin. R. 16, 51 (ECF No. 11-1). Plaintiff is a high school graduate and has no past relevant work experience. Admin. R. 21.

Plaintiff applied for supplemental security income benefits. Admin. R. 59. His claim was denied initially on January 8, 2020, and it was later denied again upon reconsideration. Admin. R. 57, 67. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), who conducted a telephonic hearing on March 16, 2021.[2] Admin. R. 85.

The ALJ found Plaintiff was not disabled and thus not entitled to disability benefits. Admin. R. 22. Utilizing the five-step sequential evaluation,[3] the ALJ first found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Admin. R. 16. The ALJ then noted that Plaintiff experienced severe

---

[2] Due to extraordinary circumstances presented by the COVID-19 pandemic, the ALJ at the National Hearing Center in Chicago, Illinois, was unable to conduct the hearing by video.

[3] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

impairments of "depression, anxiety, bipolar disorder, and status post myocardial infraction." Admin. R. 16. The ALJ determined that Plaintiff's impairments do not meet or medically equal any listed impairment in appendix 1 of the social security regulations. Admin. R. 16.

The ALJ next conducted a residual functional capacity (RFC) analysis, finding that Plaintiff can "perform medium work as defined in 20 CFR 416.967(c)," but could not climb ladders, ropes or scaffolds, although he is able to occasionally climb ramps and stairs. Admin R. 17. The ALJ decided that Plaintiff "could not work at unprotected heights or around moving mechanical parts" but could perform "simple, routine and repetitive tasks but not at a production rate pace." Admin. R. 17. The ALJ reviewed, among other evidence, two medical expert reports that reached different conclusions about the extent and effects of Plaintiff's mental impairments. Admin R. 20-21. The ALJ rejected both opinions as unpersuasive. Admin. R. 20-21. He held that one report, which determined Plaintiff had no severe mental impairments, was inconsistent with the history of treatment of Plaintiff's mental health. Admin. R. 21. The ALJ held that the other report, which noted mild to marked mental limitations on Plaintiff's work abilities and a need to miss more than four days of work per month, was inconsistent with reports submitted by clinicians at the same treatment location. Admin. R. 20.

Finally, relying on the testimony of a vocational expert, the ALJ determined that Plaintiff could do other substantial gainful activity such as a laundry worker, cleaner, or lab equipment cleaner, and that such jobs existed in significant

3

numbers in the national economy. Admin. R. 22. Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act and not entitled to benefits. Admin. R. 22.

Plaintiff appealed the ALJ's decision to the Appeals Council. Admin. R. 5-7. The Appeals Council found that the appeal did not provide a basis for modifying the ALJ's decision. Admin. R. 5. Plaintiff then filed his complaint in federal court, asserting that the ALJ erred in finding him disabled. Compl. 2. Specifically, Plaintiff argues that the ALJ's decision was not based on substantial evidence because he found both medical reports on the effects of Plaintiff's mental impairments unpersuasive and did not identify medical expert evidence as a basis for the RFC determination. Pl.'s Br. 11-20.

**Legal Standard**

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard.'" *Copeland*, 771 F.3d at 923 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance.").

The ALJ, and not the courts, resolves conflicts in the evidence; the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the Commissioner stated to support her decision. *Copeland*, 771 F.3d at 923. If the Commissioner's findings are supported by substantial evidence, the findings are conclusive, and the Commissioner's decision must be affirmed. *Martinez*, 64 F.3d at 173. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett*, 67 F.3d at 564.

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [ALJ's] findings." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Id.* (quoting *Martin*, 748 F.2d at 1031). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.* (citing *Jonson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)).

## Analysis

Plaintiff argues that the ALJ erred in his consideration of expert medical evidence to determine the Plaintiff's RFC. Pl.'s Br. 8-17. Thus, Plaintiff argues, the

5

ALJ's finding is based on lay interpretations and the ALJ's own opinion rather than the required substantial evidence. Pl.'s Br. 8-17. The Commissioner responds that the ALJ's decision is supported by substantial evidence because the ALJ does not need to endorse a specific medical opinion to support their RFC finding; instead, the ALJ relied on evidence from exams and treatment history, and the medical findings of a state-agency psychological consultant was more restrictive than and supports the ALJ's ruling. Def.'s Br. 2-11 (ECF No. 15).

The ALJ bears the "sole responsibility for determining the [plaintiff's] disability status." *Thibodeaux v. Astrue*, 324 F. App'x 440, 443 (5th Cir. 2009) (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). "Determining a [plaintiff's RFC] is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett*, 67 F.3d at 564.

An ALJ's RFC analysis determines the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hill*, 2020 WL 6370168, at *6 (cleaned up) (quoting *Hollis v. Bowen*, 837 F. 2d 1378, 1386-87 (5th Cir. 1988) (per curiam)), *adopted by* 2020 WL 6363878

6

(N.D. Tex. Oct. 29, 2020). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P, 61 Fed. Reg. 34474, 34475 (July 2, 1996). An individual's RFC should be based on all relevant evidence in the case record, including opinions submitted by medical sources. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, *supra*.

ALJs may weigh competing medical opinions, *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), but may not substitute their lay opinions for the uncontroverted medical opinion of examining medical professionals who opine on the effects of Plaintiff's mental impairments. *See Williams v. Astrue*, 355 F. App'x 828, 832, *adopted by* 2019 WL 3842975 (N.D. Tex. Aug. 15, 2019). The Fifth Circuit has explained "as a non-medical professional, the ALJ is not permitted to draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Kenneth S. v. Saul*, 2019 WL 3881618, at *5 (N.D. Tex. July 31, 2019) (Horan, J.) (internal quotations omitted) (quoting *Frank v. Barnhart*, 326 F.3d 618, 621-22 (5th Cir. 2003)), *adopted by* 2019 WL 3859653 (N.D. Tex. Aug. 15, 2019) (Lindsay, J.). "The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018) (internal quotations omitted) (quoting *Morales*, 225 F.3d at 319); *see Deborah Jean S. v. Saul*, 2021 WL 374986, at *5-6 (N.D. Tex. Jan. 4, 2021) (Horan,

J.) (citing *Lopez v. Saul*, 2020 WL 4934462, at *6 (W.D. Tex. Aug. 22, 2020)), *adopted by* 2021 WL 364041 (N.D. Tex. Feb. 3, 2021) (Lynn, C.J.).

The Fifth Circuit has "held that an ALJ may not—without opinions from medical experts—derive" a plaintiff's RFC and "an ALJ may not rely on his own unsupported opinion as to the *limitations* presented by the applicant's medical conditions." *Jeff Ivan M. v. Berryhill*, 2019 WL 3847992, at *5 (N.D. Tex. July 26, 2019) (Horan, J.) (emphasis added) (internal quotations omitted) (quoting *Williams*, 355 F. App'x at 832 n.6). Indeed, ALJs need not accept expert medical opinions "verbatim nor accept[] the testimony of [a medical expert]," but they must have substantial evidence in support of their RFC determination. *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021). ALJs are directed to resist the urge to "play[] doctor" and make independent assessments of raw medical data, *Kenneth S.*, 2019 WL 3881618, at *7, particularly as to the effects of mental limitations, *see Salmond*, 892 F.3d at 818.

In this case, the ALJ ignored these admonishments. He rejected the two medical source opinions in the record discussing the extent and effects of Plaintiff's alleged mental impairments and improperly derived Plaintiff's mental RFC based on his own lay interpretation of the evidence. The ALJ's error resulted in a determination that was not supported by substantial evidence.

The ALJ thoroughly summarized the medical evidence relevant to Plaintiff's mental impairments. Admin. R. 17-21. He noted that Plaintiff had been diagnosed with depression, anxiety, and bipolar disorder, and that Plaintiff had been

8

prescribed a variety of medications to treat these impairments. *See id.* The ALJ also noted the numerous adjustments Plaintiff's medical providers made to the dosages prescribed. *See id.*

The ALJ further reviewed two medical source opinion reports discussing the extent and effects of Plaintiff's alleged mental impairments. *See* Admin. R. 20-21. The first report, by Metrocare physician Dr. Suresh Sedhain, concluded Plaintiff had: (i) "mild" limitations in understanding and carrying out instructions; (ii) "marked" limitations in maintaining sustained concentration and persistence; (iii) "moderate to marked" limitations in interacting appropriately with others; and (iv) "marked" limitations in adapting to changes in a routine workplace. Admin. R. 20, 406-08. However, the ALJ found Dr. Sedhain's opinion "unpersuasive" and inconsistent with reports submitted by the clinicians at Metrocare. Admin. R. 20. The other report, by state agency psychological consultant Dr. Matthew Snapp, found Plaintiff's "[i]mpairment or combination of impairments do[] not significantly limit physical or mental ability to do basic work activities" and did not render any opinion about Plaintiff's mental limitations. Admin. R. 66. The ALJ also rejected Snapp's opinion because the ALJ determined it was "inconsistent with [Plaintiff's] need for consistent mental health treatment." Admin. R. 21, 65-66.

The ALJ found Plaintiff suffered from mental impairments, including depression, anxiety, and bipolar disorder, that were severe. Then, the ALJ determined Plaintiff's RFC after reviewing clinician notes on Plaintiffs' mental health treatment with medication, and the ALJ's observation that the notes stated

9

medication was "effective [in] control[ing] [Plaintiff's] depressive symptoms." Admin R. 21. Notably, the ALJ lacked—after rejecting the Sedhain report—any medical expert opinion to analyze the effects of the depressive symptoms on the Plaintiff's ability to work. Admin. R. 21.

The ALJ found unpersuasive the only expert medical opinion that analyzed "the effect [Plaintiff's] condition had on his ability to work." *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *see Demarcus G. v. Kijakazi*, 2021 WL 6297778, at *4 (N.D. Tex. Dec. 17, 2021) ("An ALJ may weigh competing medical opinions, but may not substitute his lay opinion for the uncontroverted medical opinion of examining medical professionals who opined concerning the effects of Plaintiff's mental impairments . . . ." (internal citation omitted)). While other medical records from Metrocare discuss the range of Plaintiff's mental impairments, none describe the *effects* of those impairments on Plaintiff's ability to work. Admin. R. 330-53, 357-71, 377-97, 485-88. Dr. Sudhein's report was the only piece of medical evidence that discusses the extent of the *effects* of Plaintiff's mental impairments on his ability to work. Admin. R. 406-08. Without any analysis of the effects of mental limitations included in any medical records, the ALJ relied on his own assessment of the raw medical data. The ALJ's RFC finding thus is not supported by substantial evidence.

The Commissioner appears to argue that because the Sudhein and Snapp reports were in the administrative record and that the Snapp report is more restrictive that the ALJ's RFC finding, the ALJ's decision is supported by

10

substantial evidence. Def.'s Br. 8. But a report the ALJ rejected as "unpersuasive" cannot form the basis of an ALJ's opinion. Without any medical report discussing the effects of mental limitations to justify his RFC determination, the ALJ's decision is not supported by substantial evidence.

The Commissioner argues that this decision is not aligned with the Social Security Administration's (SSA) promulgated regulations and Social Security Rulings (SSR). Indeed, the SSA regulations and policies do not necessitate medical opinions. *See* 20 C.F.R. § 416.927(a)(2); SSR 96-8p, *supra*.[4] The SSA regulations do not *require* medical opinions included in the record nor do they *require* specific weight to any specific opinion. *See* 20 C.F.R. § 416.1520c(a). But what the ALJ may not do is make his own decisions about the extent of effects of medical impairments without evidence to determine a plaintiff's RFC. *See Ripley*, 67 F.3d at 557. The Fifth Circuit has held that the ALJ must base an RFC determination on something other than the ALJ's own independent assessment of raw medical data. *See Jeff Ivan H.*, 2019 WL 3847992, at *5; *see also Webster*, 19 F.4th at 719 (relying on a state agency report for RFC determination); *Gutierrez v. Barnhart*, 2005 WL 1994289, at *9 (5th Cir. 2005) (relying on a medical expert's opinion and medical records). The ALJ here discarded each medical opinion about mental limitations

---

[4] The Commissioner also relies on the July 2, 1996, Social Security Ruling 96-5p, Def.'s Br. 5, but this was rescinded in March 2017, *see* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263, 15263 (Mar. 27, 2017); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5845 (Jan. 18, 2017).

11

and made his own determination of the effects of Plaintiff's mental limitations on his ability to work.

In support of her argument, the Commissioner points to this Court's decision in *Steven K. v. Kijakazi* but mischaracterizes that outcome. Def.'s Br. 5, 10; 2022 WL 1056920, at *12 (N.D. Tex. Jan. 19, 2022) (Rutherford, J.). The ALJ in *Steven K.* did not use her own lay interpretation of the medical record to determine a claimant's RFC; she partially relied on expert medical opinions to determine the impairment's effects on the claimant's ability to work. *See Steven K.*, at *12 (noting that the ALJ "determined the state-agency physician's medical-opinion evidence was 'partially persuasive'"). Therefore, the ALJ in *Steven K.* did not rely solely on her own evaluation of the medical evidence to make a determination, in contrast to this case.[5] The Commissioner asserts that the ALJ here merely did not find the medical source opinions "entirely persuasive." Resp. 15. But that is not what happened here. The ALJ rejected both opinions, without

---

[5] Plaintiff points out language that the ALJ uses, including, "I will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the claimant's medical sources" as evidence of impropriety in the RFC analysis. Pl.'s Br. 13; Pl.'s Reply 3 (ECF No. 16). However, this echoes the Social Security Administration's own methodology for considering and articulating medical opinions of experts, *see* 20 C.F.R. § 404.1520c(a), and is not dispositive unless, as in *Demarcus G. v. Kijakazi*, it is accompanied by a record without other substantial medical evidence supporting the ALJ's RFC determination. *See* 2021 WL 6297778, at *4 (finding no substantial evidence when the ALJ did not rely at all on any medical expert opinion and made his own determinations of cursory mental status exams).

12

qualification, as "unpersuasive." Then, the ALJ turned to the treatment notes and derived his own interpretation of Plaintiff's limitations.

Because the ALJ's decision is not based on substantial evidence, the Court should reverse the ALJ's decision and remand for a new hearing.

## Recommendation

For the reasons stated, the Court should REVERSE the Commissioner's decision and REMAND the case for further proceedings.

**SO RECOMMENDED.**

January 31, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).